#### IN THE UNITED STATES DISTRICT COURT
#### DISTRICT OF KANSAS

**Keith E. Barnwell et al.,**

      **Plaintiffs,**

v.                                                        **Case No. 08-2151-JWL**

**Corrections Corporation of America,**

      **Defendant.**

#### MEMORANDUM & ORDER

Plaintiffs, current and former employees of defendant Corrections Corporation of America, filed this suit on behalf of themselves and others similarly situated alleging violations of the Fair Labor Standards Act (FLSA). This matter is presently before the court on plaintiffs' motion for conditional certification of class claims under § 216(b) of the FLSA (doc. #104).[1] After considering the parties' written submissions as well as the oral arguments presented by the parties at the December 1, 2008 motion hearing, the court is now prepared to resolve plaintiffs' motion and, as set forth in more detail below, the court grants the motion.

**Standard**

Section 216(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b), provides for an opt-in class action where the complaining employees are "similarly situated." The Tenth

---

[1]Section 16(b) of the FLSA provides that an action may be brought by an employee for himself or herself and on behalf of "other employees similarly situated." An employee similarly situated does not become a party-plaintiff under § 16(b) "unless he gives his consent in writing to become such a party" and files consent in the court where the action is pending. 29 U.S.C. § 216(b).

Circuit has approved a two-step approach in determining whether plaintiffs are "similarly situated" for purposes of § 216(b). *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). Under this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated." *See id.* at 1102 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). That is, the district court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995). For conditional certification at the "notice stage," a court "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *See Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik*, 175 F.R.D. at 678). The standard for certification at the notice stage, then, is a lenient one. *See id.* at 1103; *see also Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995) (certification decision at the notice stage is usually based only on the pleadings and any affidavits which have been filed and, thus, the standard is fairly lenient and typically results in conditional certification of a representative class).

At the conclusion of discovery, the court then revisits the certification issue and makes a second determination (often prompted by a motion to decertify) of whether the plaintiffs are "similarly situated" using a stricter standard. *Thiessen*, 267 F.3d at 1102-03. During this "second stage" analysis, a court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; and fairness and procedural considerations. *Id*.

2

at 1103.

In this case, the parties have yet to engage in discovery and agree that the court should analyze plaintiffs' motion under the "notice stage" standard described above. Thus, the court looks to the "substantial allegations" in plaintiffs' amended complaint and various sworn statements filed by plaintiffs. *See*, *e.g.*, *id.* at 1102; *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988) (making initial determination that plaintiffs were similarly situated based on detailed allegations in the pleadings as supported by affidavits).

**Background**

Consistent with the standard articulated above, the following facts are based on detailed allegations in plaintiffs' amended complaint as supported by sworn statements submitted by plaintiffs. Defendant Corrections Corporation of America (CCA) is a private prison management company that employs corrections officers and other non-exempt hourly employees at sixty-five facilities in nineteen states. Plaintiffs are employed or were employed by CCA as corrections officers or other non-exempt hourly employees such as corrections counselors, case managers and clerical employees. According to plaintiffs, defendant regularly required its corrections officers, corrections counselors, case managers and clerical employees to perform off-the-clock pre-shift work and regularly required its corrections officers to perform off-the-clock post-shift work.

Specifically, the corrections-officers plaintiffs contend that CCA regularly required corrections officers to arrive at work prior to the start of their shifts and perform pre-shift work

3

activities prior to "clocking in" for their shifts. Such pre-shift work activities included roll call, briefings on job assignments and obtaining any necessary paperwork, weapons or equipment. Plaintiffs further allege that all corrections officers were required to be present at work for these activities no later than 7 minutes prior to the start of their shifts and, in some cases, were required to be present at work as much as 30 minutes prior to the start of their shifts. According to plaintiffs, CCA refused to permit corrections officers to clock in more than 7 minutes prior to the start of their shift. At the 7-minute mark, corrections officers could begin clocking in. At all times relevant to this lawsuit, CCA utilized a timekeeping software system that "rounded" start- and stop-times to the nearest quarter hour. Thus, if an employee clocked in 7 minutes prior to the start of the shift (or any number of minutes less than 7), the time would be rounded away and the employee would not be compensated for it.

The corrections-officers plaintiffs further allege that they were routinely required to perform post-shift work activities without compensation, including briefing the incoming corrections officers, walking through the facility as an officer on duty, completing incident reports, attending meetings[2] and/or waiting in a breakroom or sally port area until one or more corrections officers volunteered to stay and work the following shift if that shift was short-staffed. According to the corrections-officers plaintiffs, briefing incoming corrections officers and walking through the facility typically lasted up to 7 minutes, such that when they clocked

---

[2]According to plaintiffs, corrections officers attended mandatory off-the-clock meetings either at the conclusion of a shift or on certain days when they were otherwise not scheduled to work but were required to come to work solely for the purpose of attending the meeting.

4

out, those 7 minutes (or less) were rounded away pursuant to the timekeeping software system. Plaintiffs allege that if a corrections officer clocked out more than 7 minutes after his or her shift (such that the timekeeping system would round up to the next quarter hour resulting in the employee getting paid for 15 minutes), he or she was advised to clock in 15 minutes "late" for his or her next shift in order to "erase" the extra minutes. Other post-shift work such as attending meetings, completing incident reports and waiting for a volunteer to cover the following shift typically occurred after the corrections officers had clocked out.

With respect to the other non-exempt hourly employees such as corrections counselors, case managers and clerical employees, plaintiffs allege that CCA routinely required them to clock-in and begin performing work activities 7 minutes prior to the start of a shift. Pursuant to CCA's timekeeping system, then, those 7 minutes were rounded away and plaintiffs were not compensated for that time. These plaintiffs also contend that they attended mandatory meetings on days when they were otherwise not scheduled to work but were required to come to work solely for the purpose of attending the meeting.

**Discussion**

In their motion for conditional certification of this action as a collective action, plaintiffs assert that they are similarly situated to each other and to potential opt-in plaintiffs in that all corrections officers were required to perform pre- and post-shift work without compensation and all other non-exempt hourly employees were required to perform pre-shift work without compensation. CCA opposes conditional certification of the class on the grounds that plaintiffs

5

have not set forth substantial allegations of a "single decision, policy or plan."

The court concludes that conditional certification of this action is appropriate for purposes of sending notice to potential class members because plaintiffs' submissions contain detailed allegations that the putative class members were "together the victims of a single decision, policy, or plan." *See Thiessen*, 267 F.3d at 1102. Significantly, plaintiffs have submitted sworn statements from nearly 200 corrections officers (representing numerous facilities in various states) and each of those corrections officers has stated that he or she was required to perform pre-shift work without compensation. Each of these corrections officers has also stated that he or she was required to spend time at the end of each shift debriefing his or her replacement and walking through the facility as "on duty" officers. According to the sworn statements, CCA did not compensate the corrections officers for these activities–activities which typically lasted 7 minutes, causing the time to be "rounded away" pursuant to CCA's timekeeping system. The sworn statements from the corrections officers concerning off-the-clock meetings, paperwork and waiting for shift volunteers also support plaintiffs' theory that CCA routinely required corrections officers to perform tasks without compensation. Plaintiffs have also submitted sworn statements from current or former case managers, corrections counselors and/or clerical employees and those individuals have stated that they were required to perform pre-shift work without compensation. These allegations are more than sufficient to support conditional certification. *See, e.g., Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 932-34 (N.D. Ill. 2008) (granting motion for conditional certification where plaintiff alleged common policy of requiring employees to perform pre- and post-shift work and failing to compensate employees

for such work); *Escobar v. Whiteside Constr. Corp.*, 2008 WL 3915715, *4 (N.D. Cal. Aug. 21, 2008) (granting motion for conditional certification where plaintiff alleged common policy of requiring pre-shift work and refusing to compensate employees for such work); *Nelson v. American Standard, Inc.*, 2008 WL 906324, at *1-2 (E.D.Tex. Mar. 31, 2008) (granting motion for conditional certification where defendant required employees to perform pre- and post-shift work tasks but only paid employees according to their specified shift time).

CCA urges that conditional certification is inappropriate because plaintiff has not come forward with substantial allegations of a "single decision, policy or plan." In support of its argument, CCA first contends that plaintiffs have alleged various off-the-clock tasks of varying duration and that such "individualized grievances" surely reflect that no overarching policy exists. By way of example, CCA highlights that one particular plaintiff complains that she was not compensated for two conversations that she had with a facility warden about budget issues after she had clocked out for the day. CCA also highlights that, according to plaintiffs' evidence, some corrections officers were required to be present at work 7 minutes prior to the start of a shift, some were required to be present at work 10 minutes prior to the start of a shift and others were required to be present at work 15 or 30 minutes prior to the start of a shift. The court is not persuaded by this argument. The fact that the specific tasks that corrections officers performed off-the-clock might have varied (or that the duration of those tasks might have varied) in no way undermines plaintiffs' substantial allegations that CCA required employees to perform work both before and after shifts without compensation. Plaintiffs' allegations are sufficient for purposes of sending notice to the potential class. *See Escobar*, 2008 WL 3915715, at *5 (fact

7

that pre-shift off-the-clock claims might require individualized inquiries concerning length and nature of work did not render claims inappropriate for conditional certification; plaintiffs made the substantial allegation that they were victims of a single illegal policy, plan, or decision–they "were required to arrive early to the construction yard and work more than their shifts required, without commensurate compensation").

CCA also contends that plaintiffs cannot prove the existence of a "single decision, policy or plan" because plaintiffs themselves do not agree on the existence of a policy and, in fact, contradict one another on whether a "policy" existed at CCA requiring pre- and post-shift work without compensation. As an initial matter, plaintiffs' evidence concerning the existence of a policy is simply not as contradictory as CCA suggests.  By way of example, CCA points to certain fill-in-the-blank sworn statements submitted by plaintiffs in which corrections officers responded "No" to the question whether there existed "a policy that you have to be present at your CCA facility before you actually clock in?"  While CCA contends that these responses constitute evidence that CCA did not have a policy requiring corrections officers to work without pay prior to the start of a shift, the responses indicate only that the responsive corrections officers did not have to work prior to clocking in.  Indeed, the subsequent fill-in-the-blank responses on these sworn statements unequivocally acknowledge the existence of a "policy at [the] CCA facility that requires you to 'clock-in' a certain number of minutes before your scheduled shift is supposed to start." Most corrections officers, in their sworn statements, stated that they were required to clock-in 7 minutes early–minutes for which they were not compensated due to the timekeeping system that would round to the nearest quarter hour. Thus,

8

the responses highlighted by CCA still support plaintiffs' theory that CCA required corrections officers to perform pre-shift unpaid work.

CCA also contends that plaintiffs' evidence is inconsistent as to the existence of a "policy" concerning off-the-clock meetings, paperwork and waiting for shift volunteers, citing deposition testimony of certain plaintiffs who testified that corrections officers were not required to attend off-the-clock meetings, were not required to complete paperwork off-the-clock and/or were not forced to wait for shift volunteers. This argument, however, misconstrues the nature of plaintiffs' theory. Plaintiffs' theory is not that CCA had a policy requiring all corrections officers to attend off-the-clock meetings, complete paperwork and/or wait for shift volunteers. Plaintiffs' theory is that CCA's policy required pre- and post-shift work without compensation, regardless of the nature of the specific tasks performed during that time. Thus, the fact that certain corrections officers were not required to attend off-the-clock meetings, or that a certain CCA facility did not require corrections officers, after clocking out, to wait for up to 30 minutes in a break room until someone volunteered for the next shift does not undermine plaintiffs' theory that CCA's overarching policy required pre- and post-shift work without compensation. With respect to that theory, the evidence is both consistent and voluminous.

Finally, even assuming that plaintiffs had submitted evidence that could be considered contradictory, the fact that evidence exists negating plaintiffs' claims does not warrant the denial of conditional certification where plaintiffs nonetheless have presented substantial allegations supporting the existence of a policy. *See Escobar*, 2008 WL 3915715, at *4 (where plaintiffs presented evidence concerning requirement of unpaid pre-shift work but plaintiffs' coworkers

9

testified that pre-shift work was not required, plaintiffs nonetheless "have shown enough to justify certification"). Moreover, any disputes over the existence of a policy will be more efficiently resolved through a collective action rather than in hundreds of separate lawsuits. For these reasons, the court rejects CCA's argument that plaintiffs have not presented substantial allegations of a single decision, policy or plan and finds that the allegations are sufficient for purposes of sending notice to the potential class.

**Contents and Mailing of Notice**

As the court has concluded that this action should be conditionally certified for purposes of notifying potential members of the class, the parties are directed to paragraph 2.B.c. of the Scheduling Order in this case, which requires the parties to meet and confer in an attempt to reach agreement on the form and substance of the proposed notice (including a proposed deadline for the potential opt-in plaintiffs to join this action by filing consents with the court) to potential class members.[3] As set forth in the Scheduling Order, if the parties are unable to reach agreement on a proposed notice, then plaintiffs shall file a motion within 20 days of the date of this order seeking approval of their proposed form of notice. Defendant must then file its objections to plaintiffs' proposed notice and submit an alternate proposed form of notice within 20 days of plaintiffs' motion seeking approval of their proposed notice.

---

[3]Consistent with paragraph 2.B.d of the Scheduling Order, once the deadline for the filing of consent-to-join forms has passed, the court and the parties can reconvene concerning a pre-trial schedule for this litigation.

For purposes of sending notice, plaintiffs ask the court to direct defendant to provide to plaintiffs the following information within 10 days of the date of this order:

> A list of all persons who worked for defendant as corrections officers from April 3, 2005 (*i.e.*, three years prior to the filing of the complaint) to the present;
>
> A list of all persons who worked for defendant as corrections counselors, case managers and clerical employees from April 3, 2005 (*i.e.*, three years prior to the filing of the complaint) to the present;
>
> the last known mailing address of each person listed;
>
> the last known phone number of each person listed;
>
> the social security number of each person listed; and
>
> dates of employment for each person listed.

In response, defendant objects that the temporal scope of plaintiffs' requested lists of persons reaches back too far and that defendant should be required only to provide a list of those persons employed by defendant in the pertinent positions within the three years prior to the date of this order. Plaintiffs agree to this modification and defendant's objection, then, is sustained. Defendant also objects to providing phone numbers and social security numbers for any persons other than those persons whose notices are returned as undeliverable. These objections are also sustained as plaintiffs have agreed that such information be provided only to the third-party administrator responsible for sending out notices (and not to plaintiffs' counsel) and only with respect to those individuals whose notices are returned to the administrator as undeliverable.

To the extent the third-party administrator obtains the phone number of a potential class members because the notice sent to that potential class member was returned as undeliverable,

11

the administrator is permitted to use that phone number only for the purpose of verifying the mailing address of the potential class member. Toward that end, the court adopts defendant's suggestion that the administrator, in contacting any potential class members by telephone, be required to adhere to a written script limiting the communication to the verification of a mailing address. The parties are directed to meet and confer in an effort to reach agreement in drafting a written script for use by the administrator in contacting potential class members by telephone. As with the drafting of the proposed notice, if the parties are unable to reach agreement on a written script, then plaintiffs shall file a motion within 20 days of the date of this order seeking approval of their proposed script and defendant must then file its objections to plaintiffs' script and submit an alternate script within 20 days of plaintiffs' motion seeking approval of their script.

Finally, plaintiffs move the court for an order permitting the mailing of "reminder" postcards to potential class members 30 days prior to the deadline for return of consent-to-join forms. Defendant objects to the mailing of reminder postcards on the grounds that contacting for the second time a potential client who has remained silent after the initial contact arguably violates the relevant ethical rules, *see* Kansas S. Ct. Rule 226 at Rule 7.3 cmt. ("[I]f after sending a letter or other communication to a client as permitted by Rule 7.2 the lawyer receives no response, any further effort to communicate with the prospective client may violate the provisions of Rule 7.3(b)."), and that, in any event, the court-approved notice is sufficient to advise potential class members of their rights. The court believes that the notice itself is adequate to advise potential class members of their right to opt-in as plaintiffs in this case and

sustains defendant's objection to the mailing of reminder postcards.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for conditional certification of class claims under 216(b) of the FLSA (doc. 104) is **granted** and the parties are directed to meet and confer concerning the notice and administrator's script as detailed in this order.

**IT IS SO ORDERED.**

Dated this 9th day of December, 2008, at Kansas City, Kansas.

> s/ John W. Lungstrum  
> John W. Lungstrum  
> United States District Judge